IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 716, AFL-CIO, § § § § | |
| Plaintiff, § § | |
| § | CIVIL ACTION NO. H-10-5063 |
| v. § § | |
| ALBEMARLE CORPORATION, INC., § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are cross-motions for summary judgment by plaintiff International Brotherhood of Electrical Workers, Local Union No. 716, AFL-CIO ("Union") (Docket Entry No. 15) and defendant Albemarle Corporation, Inc. ("Company") (Docket Entry No. 17).  The Union seeks an order compelling the Company to arbitrate Statement of Grievance, No. 10-02 ("Grievance 10-02").[1]  The Company contends that the Union is improperly attempting to use Grievance 10-02 to press a complaint before the arbitrator that lies outside the parameters of Grievance 10-02. The Company seeks dismissal on this ground of the Union's suit to compel arbitration.  For the reasons stated below, the court will grant the Union's motion for summary judgment, deny the Company's motion for summary judgment, and order that Grievance 10-02 be submitted to the arbitrator.

---

[1]Statement of Grievance, No. 10-02, Exhibit A2 to Defendant's Motion for Summary Judgment and Brief in Support, Docket Entry No. 17-2.

## I. **Background and Arguments**

The Union brought this action to compel the Company to arbitrate a grievance.[2] The Union alleges that the Company's refusal to submit Grievance 10-02 to arbitration violates the collective bargaining agreement ("CBA").[3] The Company argues that the Union is attempting to arbitrate a grievance different from the one that it processed.[4] There appears to be no dispute among the parties over whether the Union met the procedural requirements in the CBA for processing grievances.[5] The Union[6] and the Company[7]

---

[2]Plaintiff IBEW's Original Complaint to Compel Arbitration ("Union's Original Complaint"), Docket Entry No. 1, pp. 4-5.

[3]Agreement Between Albemarle Corporation, Pasadena Plant and International Brotherhood of Electrical Workers, AFL-CIO Local 716 ("CBA"), Exhibit A1 to Defendant's Motion for Summary Judgment and Brief in Support, Docket Entry No. 17-2.

[4]Defendant's Motion for Summary Judgment and Brief in Support ("Company's MSJ"), Docket Entry No. 17, pp. 8-9.

[5]Union's Original Complaint, Docket Entry No. 1, pp. 2-4; Defendant Albemarle Corporation's Answer to Complaint to Compel Arbitration, Docket Entry No. 5, pp. 2-4; Company's MSJ, Docket Entry No. 17, pp. 2-3.

[6]Plaintiff IBEW Local 716's Motion for Summary Judgment ("Union's MSJ"), Docket Entry No. 15; Plaintiff IBEW Local Union 716's Brief in Support of its Motion for Summary Judgment ("Union's Brief on its MSJ"), Docket Entry No. 16; Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19; Plaintiff IBEW Local Union 716's Reply to Defendant Albemarle Corp., Inc.'s Response to Local 716's Motion for Summary Judgment ("Union's Reply on its MSJ"), Docket Entry No. 20.

[7]Company's MSJ, Docket Entry No. 17; Plaintiff IBEW Local 716's Response to Albemarle Corporation, Inc.'s Motion for Summary Judgment ("Union's Response on Company's MSJ"), Docket Entry No. 18; Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment ("Company's Reply on its MSJ"), Docket Entry (continued...)

submitted motions for summary judgment and numerous responses followed.

The Union described the incident at issue in Grievance 10-02 as follows:

> We are grieving that the Company will not allow (15) minutes at the beginning of each regularly scheduled shift and (15) minutes at the end of each regularly scheduled shift to change clothes and go to the job location as per contract agreement Article XI - Hours and Overtime A.#4.[8]

Article XI(A)(4) of the CBA states:

> The COMPANY will allow at the beginning of each continuous period of time worked by each employee, exclusive of uncompensated meal periods, a period of fifteen (15) minutes within which an employee required by the COMPANY to change clothes as a condition of employment can change clothes, go to the job location, and make job turnover.  The COMPANY will allow at the end of each continuous period of time worked by each employee, exclusive of uncompensated meal periods, a period of fifteen (15) minutes within which an employee required by the COMPANY to change clothes as a condition of employment can make job relief, return from the job location, and change clothes.  All paid time shall be included when computing continuous periods of time worked, and uncompensated meal periods shall not interrupt such continuous periods.[9]

---

[7](...continued)
No. 21; Defendant's Supplemental Brief on Cross Motions for Summary Judgment, Docket Entry No. 22; Plaintiff IBEW Local Union 716's Response to Defendant's Supplemental Brief on Cross-Motions for Summary Judgment, Docket Entry No. 23.

[8]Grievance 10-02, Exhibit A2 to Company's MSJ, Docket Entry No. 17-2.

[9]CBA, Exhibit A1 to Company's MSJ, Docket Entry No. 17-2, Article XI ("Hours and Overtime"), Section A ("Definitions"), Paragraph 4.

The Company argues in its motion for summary judgment that the CBA provision cited by the Union, Article XI(A)(4), does not apply to any employees covered by the CBA. According to the Company,

> the express terms of Grievance No. 10-02 and the Union's answers to Albemarle's grievance replies in the Steps process, *all* make clear that the Union raised *only* an alleged violation of Article XI(A)(4), which does not apply to any bargaining unit employees as it addresses *only* employees required to change clothes as a condition of employment and no such employees are in the bargaining unit.[10]

The Company contends that the Union is seeking to arbitrate matters other than the Union grieved and other than those that could possibly come under the ambit of Article XI(A)(4).

> The Union is attempting to proceed to arbitration on a matter that it has never grieved while relying upon a provision of the CBA (Article XI(A)(4)) that clearly does not apply, all in an effort to avoid the application of bargained for provisions in the CBA which *expressly* exclude mere "complaints" from arbitration (Article VI(C)) and which further prohibit the false citation of a CBA violation in order to elevate a non-arbitrable complaint to the status of an arbitrable grievances [sic].[11]

On this basis, the Company argues that it never agreed in the CBA to arbitrate the complaint now pressed by the Union and that the court should therefore refuse to compel arbitration.[12]

The Union contests the Company's reading of Grievance 10-02,[13] but the crux of the Union's argument is that the determination of

---

[10]Company's MSJ, Docket Entry No. 17, p. 8.

[11]Id. at 10.

[12]Id.

[13]Union's Response on Company's MSJ, Docket Entry No. 18, pp. 5-7.

which matters are grieved in Grievance 10-02 is not to be determined by the court, but by the arbitrator.[14]

## II. Applicable Law

### A. Summary Judgment Standard

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

---

[14]Union's Reply on its MSJ, Docket Entry No. 20, pp. 3-4; Union's Response to Company's MSJ, Docket Entry No. 18, p. 3 ("Even if Albemarle is correct, and the Grievance is really a "Complaint" for purposes of CBA Article VI(B) – classification of such is for the Arbitrator to determine.").

**B.   CBAs, Arbitration, and the Courts**

Where an agreement states that a dispute is to be arbitrated, courts will enforce the agreement and compel arbitration. <u>Paper, Allied-Indus. Chem. and Energy Workers Int'l Union, Local 4-12 v. Exxon Mobil Corp.</u>, 2011 WL 4133563, at *3 (5th Cir. September 16, 2011) ("In determining whether the grievances at issue are arbitrable, we must examine the scope of the parties' agreement, as reflected in the arbitration clause. . . . [W]e are obliged to enforce the parties' . . . agreement according to its terms.") (internal citations and quotation marks omitted). Courts are guided by four long-standing principles in deciding whether a CBA's arbitration clause mandates the arbitration of a grievance. <u>AT & T Technologies, Inc. v. Communications Workers of America</u>, 106 S. Ct. 1415, 1418-19 (1986) (summarizing earlier Supreme Court jurisprudence).

First, arbitration is a matter of contract, and the contract will govern. <u>Id.</u> at 1418 ("The first principle . . . is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks omitted).

Second, the question of arbitrability is for the court to decide. <u>Id.</u> ("The second principle . . . is that the question of arbitrability -- whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance -- is undeniably an issue for judicial determination.").

Third, it is not for the court to rule on the merits of the grievance at issue. Id. at 1419 ("The third principle . . . is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator."); Communications Workers of America v. Southwestern Bell Tel. Co., 415 F.2d 35, 38 (5th Cir. 1969) ("We are precluded from '. . . determining whether there is particular language in the written instrument which will support the claim.'") (quoting United Steelworkers of America v. American Manufacturing Co., 80 S. Ct. 1343, 1346 (1960)). The court's role is merely to decide "[w]hether the party seeking arbitration is making a claim which on its face is governed by the contract." American Manufacturing, 80 S. Ct. at 1346.

Fourth, there is a presumption of arbitrability. AT & T, 106 S. Ct. at 1419 ("Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

-7-

Doubts should be resolved in favor of coverage.") (internal quotation marks omitted).

### III. Analysis

**A.  The CBA Between the Union and the Company**

The CBA between the Union and the Company contains an arbitration clause providing for the arbitration of grievances.[15]

> After the grievance has been processed through the three steps of the grievance procedure as outlined in this article, the UNION, . . . may process the grievance through the arbitration procedure by giving written notice to the COMPANY of a desire to arbitrate the same . . . .[16]

The arbitration provision outlines the purview of the arbitrator as follows:

> The sole function of the arbitrator shall be to determine whether the COMPANY or the UNION is correct with reference to the proper application and interpretation of, or compliance with, this agreement . . . .[17]

The terms "grievance" and "complaint" are defined in Article VI(B).

> A grievance, as that term is used in this agreement, means any dispute between the COMPANY and the UNION involving the proper application of, interpretation of, or compliance with this agreement.
>
> A complaint, which does not involve a violation of the bargaining agreement, may be processed through the first three steps of the grievance procedure outlined below, but shall not be subject to arbitration.[18]

---

[15]CBA, Exhibit A1 to Company's MSJ, Docket Entry No. 17-2, Article VII ("Arbitration of Grievances").

[16]Id. at Article VII(A) ("Procedure").

[17]Id.

[18]Id. at Article VI ("Adjustment of Grievances and Complaints"), Section B ("Definitions").

-8-

Article VI(B) prohibits the parties from attempting to arbitrate a complaint by bringing it under the guise of a grievance.

> It is agreed that no complaint shall be filed which falsely cites a contract violation merely for the purpose of elevating the complaint to grievance status.[19]

**B. Application**

The court must determine whether the parties agreed to arbitrate the dispute at issue. Paper, Allied-Indus. Chem., 2011 WL 4133563 at *3. The court's role is limited to determining whether a claim is "on its face" governed by the arbitration provision in the CBA. American Manufacturing, 80 S. Ct. at 1346.

In Article VII of the CBA, the parties agreed that the Union may process grievances through arbitration and that the arbitrator would decide which party "is correct with reference to the proper application or interpretation of, or compliance with, [the CBA]."[20] Article VI of the CBA defines "grievance" liberally, as "any dispute . . . involving the proper application of, interpretation of, or compliance with [the CBA]."[21] The Company bound itself in

---

[19]Id.

[20]CBA, Exhibit A1 to Company's MSJ, Docket Entry No. 17-2, Article VII(A).

[21]Id. at Article VI(B). This liberal definition of "grievance" stands in contrast to the more restrictive definition of "grievance" at issue in a recent Fifth Circuit decision finding that a grievance was not arbitrable because it failed the "good faith" requirement for arbitrable grievances in that CBA. Paper, Allied-Indus. Chem., 2011 WL 4133563, at *1, *4 (applying a CBA providing that "[a]n arbitrable grievance is a good faith claim by (continued...)

the CBA to arbitrate questions of interpretation and application of the CBA when the Union followed certain procedural steps.

The proper reading of Grievance 10-02 and the question of whether the Company has violated Article XI(A)(4) are issues of interpretation and application of the CBA. The Union argues that Grievance 10-02 alleges that the Company's practice violates Article XI(A)(4).[22] Whether the Company is violating Article XI(A)(4) is a question of interpretation and application of the CBA. Whether Grievance 10-02 alleges a colorable claim that the company is violating Article XI(A)(4) is also a question of interpretation and application of the CBA. More specifically, whether any of the Union employees covered by the CBA come under the protections extended in Article XI(A)(4) can only be determined by interpreting and applying the CBA. Grievance 10-02 "on its face" is a "dispute" over the proper interpretation and application of the CBA and comes, therefore, under the arbitration provision of the CBA. Under the CBA these questions are for the arbitrator.

The Company argues that the Union is using Grievance 10-02 to improperly press a claim that Article XI(A)(4) has been violated.[23] The Company contends that Article XI(A)(4) only covers employees required by the company to change clothes for work and that because

---

[21](...continued)
one party that the other party has violated a written provision of this Agreement.").

[22]Union's Original Complaint, Docket Entry No. 1, pp. 2-3.

[23]Company's MSJ, Docket Entry No. 17, pp. 8-10.

no employees are currently required by the company to change clothes, Article XI(A)(4) could not be applicable to the grievance the Union is pressing in this action.[24] But whether the Union is improperly using Grievance 10-02 turns on the meaning of Article XI(A)(4); and interpreting Article XI(A)(4) is for the arbitrator, not the court. Under the CBA signed by the Company and the Union only the arbitrator is in a position to determine whether the Union is "falsely cit[ing] a contract violation merely for the purpose of elevating the complaint to grievance status."[25]

## IV. Conclusion and Order

For the reasons stated above, Defendant's Motion for Summary Judgment (Docket Entry No. 17) is **DENIED**, and Plaintiff IBEW Local 716's Motion for Summary Judgment (Docket Entry No. 15) is **GRANTED**, except as to the request for attorney's fees.[26]

**SIGNED** at Houston, Texas, on this 8th day of November, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[24] Id.

[25] CBA, Exhibit A1 to Company's MSJ, Docket Entry No. 17-2, Article VI(B).

[26] In its Motion for Summary Judgment the Union requests attorney's fees. Union's Brief on its MSJ, Docket Entry No. 16, p. 12; Union's MSJ, Docket Entry No. 15, p. 4. Because no argument or evidence is provided in support of an award of attorney's fees, the court will deny this relief.